# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| DORIAN PERRY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:07CV1248 HEA/FRB |
| | ) | |
| PAT SMITH, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This case was referred to the undersigned pursuant to 28 U.S.C. § 636(b) for a report and recommendation on dispositive matters and for rulings on non-dispositive matters. Having reviewed the case, the undersigned recommends that the petition be dismissed.

### Background

On June 5, 1998, petitioner and two other men discussed robbing a man they knew to be in a local nightclub. They believed the intended victim to be a lucrative target because he "flashed big money" and wore "big" jewelry. Petitioner then went to the nightclub and stood at the exit waiting for the victim to leave the club.

When the victim exited the club, petitioner stuck a .25 caliber pistol in the man's side and told him to give petitioner all his money. The victim tried to push the gun away, and petitioner shot him at close range in the side of his torso. The bullet traveled through the victim's chest into his liver and through major blood vessels. The victim staggered around for about nine or ten seconds until petitioner shot him in the head at close range. The victim died as a result of the gunshot wounds.

On May 25, 2000, petitioner was indicted for (1) murder in the first degree, (2) armed criminal action, (3) robbery in the first degree, and (4) armed criminal action. Before trial, petitioner moved to sever count one from the other three counts, and the court granted the motion. A jury found petitioner guilty on the murder charge, for which he was sentenced to life imprisonment without the possibility of probation or parole. Petitioner filed a motion for a new trial, which was denied.

After the motion for new trial on count one was denied, petitioner waived his right to a jury trial on counts two through four. Petitioner submitted these counts to the court for a bench trial based on stipulated facts as per a memorandum filed with the court. The court then took the matter as heard and submitted. Upon deliberation, the court found petitioner guilty on the remaining counts. Petitioner was sentenced to thirty years' imprisonment for count two, with the sentence to run

concurrent to the sentence in count one; petitioner was sentenced to life imprisonment for count three, with the sentence to run consecutive to the sentence in count two; and petitioner was sentenced to thirty years' imprisonment for count four, with the sentence to run concurrent to the sentence in count two. Petitioner did not file a motion for a new trial.

Petitioner appealed. On direct appeal, petitioner argued (1) the evidence was insufficient for the jury to find beyond a reasonable doubt that he was guilty of murder in the first degree because the evidence failed to establish deliberation, (2) the trial court erred in denying his objection to the testimony of a witness that petitioner had "a cold look," and (3) the trial court erred in denying his motion to suppress his statement to the police because the statement had been coerced by false promises of leniency. The Missouri Court of Appeals affirmed.

Petitioner filed motions for post-conviction relief.[1] Counsel filed amended motions, which superseded the pro se motions. The motion court denied the motions after holding an evidentiary hearing. On appeal from the denial of the motion for post-conviction relief, petitioner argued that he did not receive effective assistance of counsel because trial counsel failed to call his mother Betty Perry and

---

[1]Petitioner filed two motions: a motion pertaining to his conviction on count one and a motion pertaining to his conviction on counts two through four. The motions were later consolidated by the Missouri Court of Appeals.

his brother Donald Perry as alibi witnesses, and he further argued that he did not receive effective assistance of counsel because trial counsel failed to object when the prosecutor asked Detective Joseph Nickerson what he meant when he testified that petitioner had been cooperative "up to a point." The Missouri Court of Appeals applied the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984) to these claims and found that petitioner had failed to demonstrate that counsel was ineffective. As a result, the court affirmed the denial of post-conviction relief.

Petitioner filed the instant petition for writ of habeas corpus while he was incarcerated at Eastern Reception Diagnostic and Correctional Center, naming Pat Smith as respondent. On March 27, 2009, petitioner notified the Court that he had been transferred to Crossroads Correctional Center. The superintendent of Crossroads Correctional Center is Larry Denney. The undersigned will order that the caption of this case be changed to Dorian Perry v. Larry Denney.

## Grounds for Relief

1. The trial court erred when it overruled petitioner's motion for judgment of acquittal because the evidence was insufficient for the jury to find that petitioner deliberated before killing the victim and therefore could not have been convicted of murder in the first degree by rational jurors.

2. The trial court erred when it overruled petitioner's motion

to suppress evidence of statements he made to police officers because those statements were coerced from him by false promises of leniency.

3. The trial court erred when it overruled his objection to the state witnesses's testimony regarding petitioner's facial expression at the crime scene, in violation of petitioner's rights to due process and a fundamentally fair trial.

4. Trial counsel was ineffective for failing to call petitioner's two alibi witnesses.

5. Trial counsel was ineffective for failing to object when the prosecutor asked Detective Joseph Nickerson what he meant when he said that petitioner had been cooperative "up to a point."

## Standard

"In the habeas setting, a federal court is bound by the AEDPA to exercise only limited and deferential review of underlying state court decisions." Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003). Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court

precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." <u>Id.</u> at 407-08. Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. §2254(e)(1); <u>Ryan v. Clarke</u>, 387 F.3d 785, 790 (8th Cir. 2004).

In its <u>Memorandum Supplementing Order Affirming Judgment Pursuant to Rule 30.25(b)</u>, while the Missouri Court of Appeals did not engage in a lengthy recitation of the facts of the case, it did note that the facts adduced at trial showed that petitioner shot his victim in the side, and then, as the victim staggered from the blow, petitioner said he "took no chance and shot him again" in the head from a distance of approximately six to seven inches. Resp. Exh. E at 3. The court noted that, after petitioner shot the victim a second time, he ran away, then returned to the victim's body and removed three rings from his fingers as he lay on the pavement. <u>Id.</u> Petitioner then "ran away a second time and hid for a few hours in some bushes

-6-

in a nearby office complex. While he was hiding, he dug a hole and buried the gun." Id.

State court factual findings are presumed to be correct, 28 U.S.C. § 2254(d), and may not be set aside unless they are unsupported by the record. Sumner v. Mata, 449 U.S. 539, 547-49 (1981). Petitioner bears the burden of establishing that the state court's factual determinations are erroneous. Williams v. Armontrout, 912 F.2d 924, 930 (8th Cir. 1990) (en banc). Petitioner herein makes no effort to rebut the foregoing facts with clear and convincing evidence. Having reviewed the record, the undersigned finds that the state court's findings are supported thereby, and are adopted herein to the extent they relate to the claims petitioner raises in the instant petition. See Id. at 930-31.

**Discussion**

1.  Ground One

In ground one of the petition, petitioner argues that the trial court erred when it overruled petitioner's motion for judgment of acquittal because the evidence was insufficient for the jury to find that petitioner deliberated before killing the victim and therefore he could not have been convicted of murder in the first degree by rational jurors. Petitioner argues that he did not "coolly reflect" upon his actions

because the evidence showed that he "impulsively" shot the victim only after being "surprised" by the victim's "struggling resistance to the robbery." Petitioner argues that this crime is a "classic example" of second degree murder.

A federal court's review of a sufficiency of the evidence claim is limited to "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-319 (1979). It is well established that state law defines the elements of state-law crimes. Fenske v. Thalacker, 60 F.3d 478, 480 (8th Cir.1995); Turner v. Armontrout, 845 F.2d 165, 168 (8th Cir.1988). As such, a state appellate court's conclusion that the evidence was sufficient to support a criminal conviction is entitled to "great deference" by a federal court. Jackson, 443 U.S. at 323.

Under Missouri law, "[a] person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter." Mo. Rev. Stat. § 565.020.1. "Deliberation" is defined as "cool reflection for any length of time no matter how brief." Mo. Rev. Stat. § 565.002(3). Furthermore, "[p]roof of deliberation does not require proof that the defendant contemplated his actions over a long period of time, only that the killer had ample opportunity to terminate the attack once it began." State v. Johnston, 957 S.W.2d 734, 747 (Mo. banc 1997) (citation omitted).

The Missouri Court of Appeals considered this issue and found that there was sufficient evidence to convict petitioner of first degree murder. The court noted that petitioner shot the victim twice, and that petitioner's stated reason for shooting the victim in the head was that he "took no chance." The court further noted that although petitioner initially fled after the shooting, he returned to the victim's body to loot it. Finally, the court noted that petitioner did not seek medical assistance for the victim and that petitioner hid himself after the crime and buried the gun.

Upon consideration, the undersigned finds that the decision of the Missouri Court of Appeals that the evidence was sufficient to convict petitioner of first degree murder is not contrary to or an unreasonable application of clearly established federal law. The court's decision, which is entitled to deference, is consistent with the evidence produced at trial and with Missouri's first degree murder statute. As a result, petitioner is not entitled to relief on ground one of the petition.

2. <u>Ground Two</u>

In ground two of the petition, petitioner argues that the trial court erred when it overruled petitioner's motion to suppress and admitted his confession. Petitioner raised this point on direct appeal, and the Missouri Court of Appeals denied the claim. Resp. Exh. E.

At the time petitioner's conviction became final, the law was clearly

established that the Fifth Amendment to the United States Constitution guarantees a criminal defendant a privilege against self-incrimination. U.S. Const. Amend. V. In the context of considering whether a confession was voluntarily made, the determinative question is whether the defendant's will was overborne when he confessed. Lynumn v. Illinois, 372 U.S. 528, 534 (1963) (citations omitted); see also Sumpter v. Nix, 863 F.2d 563, 565 (8th Cir. 1988) (citing Culombe v. Connecticut, 367 U.S. 568, 602 (1961)) (recognizing that the relevant question is whether the confession was extracted by threats, violence, or promises such that the defendant's will was overborne and his capacity for self-determination was critically impaired). This determination must be made by looking at the totality of the circumstances, including the conduct of the law enforcement officials and the defendant's capacity to resist any pressure. United States v. Meirovitz, 918 F.2d 1376, 1379 (8th Cir. 1990). "Obviously, interrogation of a suspect will involve some pressure because its purpose is to elicit a confession." United States v. Astello, 241 F.3d 965, 967 (8th Cir. 2001). However, there must be some showing that the officers engaged in some coercive conduct to overbear the will of the defendant. Id. "Coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'". Colorado v. Connelly, 479 U.S. 157, 167 (1986). "[O]fficers elicit confessions through a variety of tactics, including claiming not to

believe a suspect's explanations, making false promises, playing on a suspect's emotions, using his respect for his family against him, deceiving the suspect, conveying sympathy, and even using raised voices. None of these tactics render a confession involuntary, however, unless the overall impact of the interrogation caused the defendant's will to be overcome." United States v. Brave Heart, 397 F.3d 1035, 1041 (8th Cir. 2005) (Internal citations and quotes omitted). If the state action can be said to rise to such a level that the defendant's will was overborne, "the confession cannot be deemed 'the product of a rational intellect and a free will.'" Lynumn, 372 U.S. at 534.

In the instant case, petitioner argues that admission of his confession was error "because it was extracted by police officer Nickerson with false promises to pass it on to federal authorities, when Petitioner was desperate to stay out of the Missouri state prison system. This implied promise of leniency, under the circumstances, coerced Petitioner to make a statement as his only chance of avoiding state prison time [where he strongly believed certain prisoners would potentially hurt or kill him]." (Docket No. 1 at 11). In denying petitioner's claim, the Missouri Court of Appeals found as follows:

> Defendant claims that the officer should have known that
> his promise to convey the tape of his confession to the
> agent was, to Defendant, equivalent to a promise of

leniency because the officer knew of Defendant's "anxiety about federal time."  A review of the record reveals that "[i]f Defendant had a hope of leniency, that hope sprang 'from the seeds of his own planting and is not sufficient to render the resulting confession inadmissible.'" (citation omitted).  Furthermore, we note that Defendant does not claim an explicit promise of leniency.  "Encouragement to cooperate is far from a promise of leniency and does not, as a matter of law, render a confession involuntary." (citation omitted).

Resp. Exh. E at 8.

In the case at bar, the record does not support the conclusion that Detective Nickerson ever made any quid pro quo assurances to petitioner that, if he confessed, he would avoid serving time in a state prison, nor does petitioner herein make any attempt to argue that Detective Nickerson ever made any express promises of leniency.  Instead, petitioner claims that Detective Nickerson promised to provide a copy of his taped confession to an FBI agent, arguing that such statement amounted to a promise of leniency because Detective Nickerson knew that petitioner wanted to avoid serving time in a state facility.  The connection between what the detective actually said and what petitioner believed the detective was promising is simply to attenuated to conclude that the detective engaged in coercive conduct designed to overbear petitioner's will.  See Astello, 241 F.3d at 967.  In contrast, in Lynumn, the record showed that the defendant confessed only after the police told her that

state financial aid for her infant children would be cut off, and that the children would be taken away from her, if she did not cooperate. Lynumn, 372 U.S. at 534. The Supreme Court also noted that the police delivered these "threats" while the defendant was "encircled in her apartment by three police officers and a twice convicted felon who had purportedly 'set her up.'" Id. The case at bar presents a quite different situation. Here, as the state court properly noted, petitioner's interpretation of the detective's statement as a promise of leniency "sprang 'from the seeds of his own planting and is not sufficient to render the resulting confession inadmissible.'" Resp. Exh. E at 8 (citations omitted). Detective Nickerson's statement to petitioner was properly discounted by the Missouri Court of Appeals as not rising to the level of overbearing petitioner's will and rendering his confession involuntary. See Simmons v. Bowersox, 235 F.3d 1124, 1133 (8th Cir. 2001) ("[a]lthough a promise made by law enforcement is a relevant consideration in assessing police conduct, it is only one circumstance to be considered and does not render a confession involuntary per se"); see also Smith v. Bowersox, 311 F.3d 915, 922 (8th Cir. 2002) (while "[i]t is improper for a police officer to obtain a confession through an express or implied promise of leniency ... such a promise will not render the confession involuntary unless it overcomes the defendant's free will and impairs his capacity for self determination").

The decision of the Missouri Court of Appeals was well-based on law and fact, and was not "contrary to," nor did it involve an "unreasonable application of," clearly established federal law. 28 U.S.C. § 2254(d)(1). In addition, petitioner has not shown that the state court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). Because petitioner herein cannot demonstrate that Detective Nickerson's vague assurance amounted to coercive conduct that caused his will to be overborne, thus rendering his confession involuntary, his claim in ground two should be denied.

3.    Ground Three

In ground three of the petition, petitioner argues that the trial court erred when it overruled his objection to the state witnesses's testimony regarding petitioner's facial expression at the crime scene, in violation of petitioner's rights to due process and a fundamentally fair trial.

At the time petitioner's conviction became final, the law was clearly established that the Fourteenth Amendment to the United States Constitution guarantees a criminal defendant the right to due process of law. U.S. Const. Amend. XIV. Questions regarding the admissibility of evidence are matters of state law, and on habeas review, the federal court does not examine whether the evidence

was properly admitted under state law.   See Estelle v.. McGuire, 502 U.S. 62, 67

(1991).  In fact, rulings on the admission or exclusion of evidence in state trials

rarely rise to the level of a federal constitutional violation.  Nebinger v. Ault, 208

F.3d 695, 697 (8th Cir. 2000).  In Missouri, the trial court has wide latitude when

considering whether the probative value of proffered evidence outweighs any

prejudicial effect such evidence may have.  State v. Swigert, 852 S.W.2d 158, 163

(Mo.Ct.App. 1993).  A federal court may grant habeas relief when a state court's

evidentiary ruling "infringes upon a specific federal constitutional right or is so

grossly or conspicuously prejudicial that it fatally infected the trial and denied the

defendant the fundamental fairness that is the essence of due process."  Maynard v.

Lockhart, 981 F.2d 981, 986 (8th Cir. 1992) (quoting Berrisford v. Wood, 826 F.2d

747, 749 (8th Cir. 1987)).  To meet this standard, a petitioner "must show a

reasonable probability that the error affected the trial's outcome."  Troupe v.

Groose, 72 F.3d 75, 76 (8th Cir. 1995); see also  Meadows v. Delo, 99 F.3d 280,

283 (8th Cir. 1996).

In the case at bar, petitioner alleges error stemming from the trial court's

admission of eyewitness testimony that petitioner had a "cold look" on his face

when he shot the victim.  Petitioner argues that admission of the testimony was error

because the witness had never seen petitioner before, and "was unable to judge his

demeanor, causing a miscarriage of justice because this evidence prejudiced petitioner's defense that he did not intend to kill the deceased." Id.

The following exchange occurred at trial during direct examination of the state's eyewitness:

| | |
|---|---|
| [Prosecutor:] | And can you tell me—can you describe the look on that man's face when he shot [the victim] in the head. Can you tell me and the jury what that man's face looked like? |
| [Witness:] | His face at that time looked like a cold look, like he didn't care, like he had done it before. |
| [Defense counsel:] | I object. This is totally improper speculation as to what—I'm going to object. |
| The Court: | The objection to the last part is sustained. |
| [Prosecutor:] | If I understand correctly, you described the look as a cold look; is that correct? |
| [Witness:] | Yes. |
| [Prosecutor:] | Thank you. |

Resp. Exh. ** at 142-43.[2]

The Missouri Court of Appeals reviewed this issue under the plain error standard because petitioner did not preserve the issue for appeal by including it in

---

[2]Resp. Exh. **, which includes the trial transcript, was filed on November 8, 2007, after the other exhibits were filed.

his motion for a new trial.[3]  "When a state court reviews a petitioner's claim under a plain-error standard, in federal habeas proceedings [the claim is reviewed] for plain error."  Roll v. Bowersox, 177 F.3d 697, 700 (8th Cir. 1999).  Plain error is error which is plain, meaning obvious, and substantial, meaning that it affected the trial's outcome.  United States v. Frady, 456 U.S. 152, 163 (1982), (citing United States v. Gerald, 624 F.2d 1291, 1299 (5th Cir. 1980)); United States v. Johnson, 12 F.3d 827, 835 (8th Cir. 1994); see also Kilmartin v. Dormire, 161 F.3d 1125, 1127 (8th Cir. 1998) (Under plain error review, the Court is limited to determining whether manifest injustice resulted from the trial court's ruling).

The Missouri Court of Appeals found no plain error for three reasons.  First, the eyewitness's testimony regarding petitioner's facial expression was proper evidence in that a witness is permitted to testify about events he personally observed and to his matter of fact comprehension of what he has seen in a descriptive manner.  Second, petitioner received the relief he requested in that his objection was partially

---

[3]Respondent argues that ground three is procedurally barred because the issue was decided under the plain error standard.  The United States Court of Appeals for the Eighth Circuit has recently stated, however, that "[a]n issue that receives plain-error review on direct appeal in state court is not procedurally barred from review under the AEDPA."  Rousan v. Roper, 436 F.3d 951, 962 n. 4 (8th Cir. 2006); see also Kilmartin v. Dormire, 161 F.3d 1125, 1127 (8th Cir. 1998) (noting that an intra-circuit split exists as to "whether plain-error review by a state appellate court waives a procedural default by a habeas petitioner, allowing collateral review by [the federal courts.]").

sustained and he requested no further relief.  Third, that petitioner's decision not to

request further relief was trial strategy in that he did not want to "highlight the

inappropriate statement made by Eyewitness about [petitioner] appearing as though

he had killed someone before."  Resp. Exh. E at 7.

Review of the state court's decision reveals no obvious error.  Petitioner

argues that the witness's testimony should have been excluded because the witness

had no previous connection with petitioner, and his opinion about petitioner's

demeanor was mere speculation.  However, petitioner does not dispute that the

witness personally observed petitioner's face as petitioner shot the victim, and

witnesses are allowed to testify regarding inferences that are rationally based on

their perceptions.  Fed.R.Evid. 701 (lay witnesses may testify as to opinions or

inferences which are "(a) rationally based on the perception of the witness and (b)

helpful to a clear understanding of the witness's testimony or the determination of a

fact in issue").  "While the ordinary rule confines the testimony of a lay witness to

concrete facts within his knowledge or observation, the [c]ourt may rightly exercise

a certain amount of latitude in permitting a witness to state his conclusions based

upon common knowledge or experience."  United States v. Oliver, 908 F.2d 260,

264 (8th Cir. 1990) (citation omitted).  In the case at bar, it cannot be said that the

trial court's admission of the eyewitness's testimony regarding what he saw, and

what he reasonably inferred from what he saw, amounted to obvious error.

Even if it could be said that the state court's admission of the testimony was erroneous, petitioner could not demonstrate that the error was substantial because he could not show that the outcome of his trial would have been different absent the error. As the Missouri Court of Appeals noted, the state presented evidence, including petitioner's own confession, which showed that petitioner approached the victim, shot him in the side, and then, as the victim staggered from the wound, shot him again at close range. Resp. Exh. E at 3. The evidence also showed that petitioner initially ran away, but then returned to the victim's body, removed rings from his fingers, ran away again, hid in the bushes, and buried the gun. Id. Because of the overwhelming evidence presented against petitioner, he cannot demonstrate a reasonable probability that the outcome of his trial would have been different had the trial court not admitted the eyewitness's testimony regarding petitioner's facial expression. Troupe v. Groose, 72 F.3d 75, 76 (8th Cir. 1995) (petitioner "must show a reasonable probability that the error affected the trial's outcome").

Based upon the foregoing, the undersigned determines that no obvious and substantial error appears. The claim raised in ground three of the instant petition should therefore be denied.

4.    <u>Ground Four</u>

In ground four of the petition, petitioner argues that trial counsel was ineffective for failing to call petitioner's two alibi witnesses. Specifically, petitioner claims that counsel should have called his mother Betty Perry and his brother Donald Perry as alibi witnesses.

To prevail on a claim of ineffective assistance of counsel in the state courts, a defendant must show that counsel's performance was both deficient and prejudicial. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984). But to prevail on an ineffective assistance of counsel claim in a § 2254 case, a petitioner "must do more than show that he would have satisfied <u>Strickland</u>'s test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied <u>Strickland</u> incorrectly. Rather, he must show that the [state court] applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner." <u>Bell v. Cone</u>, 535 U.S. 685, 698-99 (2002).

The post-conviction court held an evidentiary hearing on this claim. Trial counsel testified at the hearing that he chose not to pursue an alibi defense because he believed it was not viable. He testified that he feared an ineffective alibi defense could anger the jury and lead to a death penalty verdict. He testified that he instead

chose to attack petitioner's statement to the police as well as the prosecution's witness. During the hearing, counsel called petitioner's mother as witness. Petitioner's mother told the post-conviction court that she met with counsel before the trial. She further testified that she never told counsel that movant was with her at the time of the murder. Petitioner's brother also testified at the hearing. Petitioner's brother testified that he was with petitioner at some point on the night of the murder; he further testified that at some point in the night he dropped petitioner off and had no more contact with him. Petitioner's brother testified that he met with counsel two or three times before the trial.

Upon review of this claim, the post-conviction court found that trial counsel's decision not to call petitioner's mother and brother as alibi witness was a matter of trial strategy and that counsel was not ineffective.

The Missouri Court of Appeals applied the two-pronged Strickland test to this claim. The court first found that counsel's decision not to call the witnesses was a matter of strategy, and as such, the decision was virtually unchallengeable. There is a "strong presumption" that counsel's strategy and tactics fall "within the wide range of reasonable professional assistance." Strickland, supra, at 689. The court further found that the strategy was reasonable in light of the testimony of petitioner's mother and brother during the evidentiary hearing. The court concluded

that petitioner had failed to demonstrate that counsel's performance was deficient.

Upon consideration, the undersigned finds that the decision of the Missouri Court of Appeals that counsel's performance was not deficient is not contrary to or an unreasonable application of clearly established federal law. The court applied the correct legal standard, and its application of that standard was reasonable. As a result, petitioner is not entitled to relief on ground four of the petition.

5.    Ground Five

In ground five of the petition, petitioner argues that trial counsel was ineffective for failing to object when the prosecutor asked Detective Joseph Nickerson what he meant when he said that petitioner had been cooperative "up to a point."

During cross-examination, defense counsel asked Detective Nickerson: "During the course of your investigation and your interaction with [petitioner], he was cooperative with you at all times, wasn't he?" Resp. Exh. ** at 307. Detective Nickerson responded, "Up to a point." Id. Later, the prosecutor informed the trial court that he intended "to ask Detective Nickerson if he believed everything that [petitioner] had told him." Id. at 313. Defense counsel objected to the prosecutor's questioning the detective about whether he believed petitioner's comments about the details of the shooting. Id. The trial court sustained the objection with respect to

the detective's belief about petitioner's comments about the details of the shooting, but allowed the prosecutor to question the detective "in what respect did he believe [petitioner] was not cooperative." Id. at 314. On redirect examination, the prosecutor asked the detective: "[Defense counsel] asked you a question about [petitioner] being cooperative, and you stated he was cooperative up to a point. What did you mean by that?" Id. at 315. Nickerson replied, "I didn't believe everything he told me." Id. Defense counsel did not further object.

The post-conviction court denied relief on this point. The Missouri Court of Appeals applied the two-pronged Strickland test to this claim. The court found that the defense had injected the issue of petitioner's cooperation with the police into the trial, and therefore, any objection to the prosecutor's question to Nickerson regarding cooperation would have been non-meritorious. The court further found that there was no reasonable probability that the outcome of the trial would have been different had counsel objected to the prosecutor's questions. Finding neither prong of the Strickland test to be met, the court found that petitioner was not entitled to relief.

Upon consideration, the undersigned finds that the decision of the Missouri Court of Appeals that counsel's performance was not deficient is not contrary to or an unreasonable application of clearly established federal law. The court applied

the correct legal standard, and its application of that standard was reasonable. As a result, petitioner is not entitled to relief on ground five of the petition.

## Conclusion

For these reasons, the undersigned recommends that the petition be dismissed without further proceedings. Furthermore, petitioner has failed to make a substantial showing of the denial of a constitutional right. As a result, the undersigned further recommends that no certificate of appealability issue. 28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY ORDERED** that the caption of this case be changed to Dorian Perry v. Larry Denney.

**IT IS HEREBY RECOMMENDED** that petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be dismissed without further proceedings.

**IT IS FURTHER RECOMMENDED** that no certificate of appealability issue. 28 U.S.C. § 2253.

The parties are advised that they have fourteen (14) days to file written objections to this Report and Recommendation. Fail to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this 1st day of September, 2010.

FREDERICK R. BUCKLES
UNITED STATES MAGISTRATE JUDGE